Ghirmay M. KIDANE, Plaintiff,

v.

NORTHWEST AIRLINES,
INC., Defendant.

Civil Action Nos. 95–2265
SSH, 97–477 SSH.

United States District Court,
District of Columbia.

March 17, 1999.

Sol Z. Rosen, Washington, DC, for Plaintiff.

Paul R. Monsees, Lloyd N. Fantroy, Foley & Lardner, Washington, DC, for Respondent.

1. Defendant's motion incorporates by reference all the pleadings filed in Civil Action No. 95–2265. (As noted in the caption, these cases are not consolidated).

2. Defendant also proffers evidence that plaintiff was disciplined for threatening a Customer Service Supervisor who reported one of plaintiff's infractions. Plaintiff, however,

*OPINION*

**NOTE: These Civil Actions Are Not Consolidated But Are Dealt With Here In A Single Opinion.**

STANLEY S. HARRIS, District Judge.

Before the Court in Civil Action No. 95–2265 are defendant's motion for summary judgment, plaintiff's "Omnibus Opposition" thereto, and defendant's reply; and plaintiff's motion to strike the record of an interview between plaintiff's former supervisor, James J. Hare, III, and a former payroll clerk, Lucretia Moultrie, which is attached as an exhibit to Hare's affidavit, and defendant's opposition thereto. Before the Court in Civil Action No. 97–477 are defendant's motion to dismiss or, in the alternative, for summary judgment, plaintiff's opposition thereto, and defendant's reply.[1] Upon careful consideration of the pleadings and the entire record, the Court grants defendant's motions and denies plaintiff's motion to strike in Civil Action No. 95–2265. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 . . . ." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

**BACKGROUND**

Plaintiff, a black male from Ethiopia, worked for defendant Northwest Airlines from April 22, 1985, until July 22, 1995, both as an Aircraft Cleaner and a Lead Aircraft Cleaner. Between November 1994 and May 1995, plaintiff was disciplined on numerous occasions for incidents such as trading shifts with other employees, seeking overtime pay in violation of company policy, and the failure of his crew to clean aircraft on time.[2] Defendant con-

claims that he never threatened a supervisor. Therefore, the Court will not consider this alleged disciplinary action in evaluating defendant's motion for summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Plaintiff does not, however, proffer any evidence contradicting other

sidered terminating plaintiff for these disciplinary violations, but instead gave plaintiff the option to enter into a "Last Chance Agreement" which set forth terms and conditions of plaintiff's continued employment.

On June 27, 1995, plaintiff signed the Last Chance Agreement in the presence of his union representative, Rick Iacino, Robert Simko, a Customer Service Supervisor, and James J. Hare, III, the Director of Customer Service.[3] The Agreement provided that: (1) plaintiff was demoted from Lead Aircraft Cleaner to Aircraft Cleaner and was not eligible to bid for any Lead or Supervisor positions;[4] (2) plaintiff would be subject to immediate discharge for any violation of the Agreement; (3) "Mr. Kidane recognizes that just cause exists for his discharge"; and (4) plaintiff agreed not to file any grievance or lawsuit with respect to the Agreement.

Several weeks later, while investigating suspicious time card entries by another employee, defendant discovered what appeared to be alterations on several of plaintiff's time cards, the most recent one occurring the day after plaintiff signed the Last Chance Agreement. Though plaintiff denied the allegations he altered his time cards, he was fired on July 21, 1995.[5]

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 1, 1994, alleging race and national origin discrimination by defendant between March 21, 1994 and December 1, 1994. After receiving a right-to-sue letter, plaintiff filed Civil Action No. 95–2265, alleging discrimination, harassment, and retaliation in violation of both Title VII, 42 U.S.C. § 2000e et seq.,

and 42 U.S.C. § 1981. On March 10, 1997, apparently in an effort to remedy deficiencies in his first complaint, plaintiff filed Civil Action No. 97–477, alleging discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1981 only.

## STANDARD OF REVIEW

A motion to dismiss may not be granted "unless plaintiff[ ] can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All factual doubts must be resolved and all inferences drawn in favor of the plaintiff. *Tele–Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1334–35 (D.C.Cir.1985).

In the event matters outside the pleadings are presented to and not excluded by a court, and the court assures itself that such treatment would be fair to both parties, a motion to dismiss may be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56. Fed.R.Civ.P. 12(b); *Americable Int'l Inc. v. Department of the Navy*, 129 F.3d 1271, 1274 n. 5 (D.C.Cir.1997); *Tele–Communications*, 757 F.2d at 1334. Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. *See Matsushita*

---

disciplinary action taken against him, and therefore the Court treats defendant's statements of facts with respect to those incidents as admitted. *See* Local Rule 108(h); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**3.** Plaintiff states that he never read the agreement and that it was not explained to him. Moreover, he claims that he did not sign it

voluntarily because he was "forced to sign it or be fired immediately."

**4.** The Lead Aircraft Cleaner position vacated by plaintiff was filled by a black woman on August 3, 1995.

**5.** The Aircraft Cleaner position was subsequently filled by another black male from Ethiopia on August 29, 1995.

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere allegations of the pleadings, however, are not sufficient to defeat a summary judgment motion; if the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

### I. *Plaintiff's Motion To Strike*

■ As an initial matter, plaintiff moves to strike an attachment to the affidavit of James J. Hare, III, defendant's Director of Customer Service. The attachment is the summary of an interview between Hare and Lucretia Moultrie, the payroll clerk who claimed she altered time cards for plaintiff. Plaintiff argues that the attachment should be stricken because it violates Federal Rule of Civil Procedure 56(e), as it was not conducted under oath and there is no statement that the declarant is competent or that the allegations are based upon personal knowledge. The Court disagrees.

Rule 56(e) provides that "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." The Moultrie interview is referred to extensively in the Hare affidavit, and the attached copy of the interview is certified by Moultrie as an accurate reflection of the conversation she had with Hare. The attachment thus fully complies with Rule 56(e).[6]

### II. *Plaintiff's Title VII Claims*

In Civil Action No. 95–2265, plaintiff alleges that disciplinary action and other treatment by defendant's supervisory employees, culminating in plaintiff's termination, constituted discrimination and retaliation in violation of Title VII. Defendant argues that plaintiff's claims of discriminatory demotion and discharge and retaliation are barred for failure to exhaust administrative remedies. The Court agrees.

■ In order to bring a cause of action in federal court under Title VII, a plaintiff must first exhaust his administrative remedies. *See* 42 U.S.C. § 2000e–5; *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir. 1995). A Title VII lawsuit following an EEOC complaint is limited to claims that are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Park*, 71 F.3d at 907 (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994)). This limitation is important because it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992). Although the requirement of specificity in the administrative charge should not be construed to place a heavy technical burden on individuals, "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park*, 71 F.3d at 907.

In this case, therefore, plaintiff's Title VII retaliation claim is barred for failure to exhaust administrative remedies. In his EEOC complaint, filed December 1, 1994, plaintiff alleged only discrimination based on race and national origin. There is no evidence on the record indicating that plaintiff ever amended his EEOC complaint to include a retaliation charge, even after being demoted in June 1995 and fired in July 1995. *See* Hare Aff. ¶¶ 37–38 & Ex. 2. Thus, defendant's motion for summary judgment is granted with respect to plaintiff's Title VII retaliation claim.

---

**6.** The Court further notes that the interview would be admissible at trial as evidence that defendant fired plaintiff based on a reasonable belief that plaintiff had altered his time cards.

■ In addition, plaintiff's EEOC complaint contains no reference to a charge of discriminatory demotion or discharge sufficient to exhaust administrative remedies. Even had the EEOC complaint been filed after plaintiff was demoted and/or fired (in fact, the complaint was filed six months before plaintiff was demoted), the complaint does not contain sufficient detail to encompass a discriminatory demotion or discharge claim. The first paragraph of plaintiff's three-paragraph complaint states: "In 1991, I was promoted to the position of Lead Cleaner. Since March 21, 1994, I have been subjected to the harassment of my immediate supervisor and other white employees." *See* Hare Aff. Ex. 2. Although this statement is sufficient to notify the EEOC of a claim of hostile work environment, assuredly it cannot be read to encompass a discriminatory demotion or discharge claim. *Cf. Park,* 71 F.3d at 908 (claim that plaintiff was denied advancement due to national origin does not encompass hostile work environment claim). "The goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Id.* (quoting *Rush,* 966 F.2d at 1110) (internal brackets omitted). Thus, defendant is entitled to summary judgment on plaintiff's Title VII discriminatory demotion and discharge claim.

■ The only claim which satisfies Title VII's requirement of exhaustion of administrative remedies is plaintiff's racially hostile work environment claim. However, defendant is entitled to summary judgment on this claim as well. In order to establish a prima facie case of hostile work environment under Title VII, plaintiff must proffer evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citation and quotation marks omitted). "[C]asual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action" under Title VII. *Bundy v. Jackson,* 641 F.2d 934, 943 n. 9 (D.C.Cir.1981).

Plaintiff simply has not proffered sufficient evidence to establish a hostile work environment claim under Title VII. The basis of his complaint appears to be remarks allegedly made by a white crew chief, identified only as "Casper." Plaintiff offers evidence that "Casper" told him to "go back to [his] African country," made references to camels, and called him "Abdulla" and other names. *See* Kidane Decl. ¶ 4; Warner Decl. ¶ 2. Though remarks such as these, if true, doubtless are discriminatory and inappropriate, such isolated remarks are not sufficient to state a claim of hostile work environment under Title VII.[7] *See Bundy,* 641 F.2d at 943 n. 9.

### III. Plaintiff's § 1981 Claims in Civil Actions No. 95–2265 and 97–477

■ Plaintiff makes identical allegations of racial and national origin discrimination (hostile work environment and discriminatory discharge) and retaliation in violation of 42 U.S.C. § 1981 in both of his cases. As an initial matter, to the extent that plaintiff claims he was discriminated against based on the fact that he is from Ethiopia, that claim is not cognizable under § 1981. *See St. Francis College v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Though the

---

7. Although plaintiff alleges that various disciplinary actions taken against him prior to December 1, 1994, were racially motivated, as discussed below, plaintiff offers no evidence, other than his own supposition, that the disciplinary actions were motivated by racial animus. Thus, plaintiff cannot rely on these incidents as evidence to support a hostile work environment claim.

racial discrimination prohibited by § 1981 includes intentional discrimination based on "ancestry or ethnic characteristics," a plaintiff cannot base proof of discrimination under § 1981 solely on the place or nation of his origin. *See id.; Hyman v. First Union Corp.*, 980 F.Supp. 46, 52 (D.D.C.1997).

With respect to plaintiff's claims of racial discrimination and retaliation in violation of § 1981, the Court notes that the same standards apply in evaluating claims of discrimination and retaliation under Title VII and § 1981. *See, e.g., Hamilton v. Rodgers*, 791 F.2d 439, 442 (5th Cir.1986); *Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1236 (D.C.Cir.1984); *Carney v. American Univ.*, 960 F.Supp. 436, 447–48 (D.D.C.1997), *aff'd in part, rev'd in part on other grounds*, 151 F.3d 1090 (D.C.Cir. 1998); *Hodges v. Washington Tennis Serv. Int'l, Inc.*, 870 F.Supp. 386, 387 n. 1 (D.D.C.1994). It follows that plaintiff's claim of hostile work environment under § 1981 fails for the same reasons as plaintiff's Title VII hostile environment claim.

Plaintiff's remaining viable claims under § 1981, therefore, are racially discriminatory demotion/discharge and retaliation. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the basic allocation of burdens and order of presentation of proof in cases alleging discriminatory treatment and retaliation. *See also Thomas v. NFL Players Ass'n*, 131 F.3d 198, 202 (D.C.Cir. 1997); *Batson v. Powell*, 912 F.Supp. 565 (D.D.C.1996). First, the plaintiff has the burden of proving a prima facie case of discrimination or retaliation. *McDonnell*

*Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Thomas*, 131 F.3d at 202. The burden then shifts to the defendant to rebut the presumption of discrimination by proffering a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If a defendant does so, the plaintiff must show, by a preponderance of the evidence, that the defendant's asserted legitimate reason is a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

In order to establish a prima facie case of discriminatory discharge or demotion, a plaintiff must proffer evidence that he belonged to a protected class, that he performed at or near the level legitimately expected by his employer, and that he was replaced by a person outside the protected class, or, alternatively, that the position remained open. *Park v. Washington Metro. Area Transit Auth.*, 892 F.Supp. 5, 10 (D.D.C.1995), *aff'd*, 107 F.3d 924 (D.C.Cir. 1996); *see also Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1512 (D.C.Cir.1995). Plaintiff has failed to establish a prima facie case of either discriminatory discharge or discriminatory demotion because he was replaced on both occasions by members of his own race. When plaintiff was demoted from Lead Aircraft Cleaner to Aircraft Cleaner, he was replaced by a black woman, Carol Slater. Hare Aff. ¶ 29. When plaintiff was fired from his Aircraft Cleaner position, he was replaced by a black man from Ethiopia, Desta Getachew.[8]  *Id.* at ¶ 31.

---

8. Plaintiff argues that he need not show that his replacement was outside his protected class in order to make out a prima facie case, relying on the Supreme Court's decision in *O'Connor v. Consol., Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). In *O'Connor*, the Supreme Court held that a plaintiff's being replaced by someone outside his protected class is not a proper element of a prima facie case of age discrimination under the Age Discrimination in Employment Act ("ADEA"). *Id.* 116 S.Ct. at 1310. The *O'Connor* reasoning, however, does not translate to a requirement that the fourth prong of a prima facie case be removed in cases alleging racial discrimination. *See Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir.1996); *Simens v. Reno*, 960 F.Supp. 6, 8–10 (D.D.C.1997); *Haley v. Virginia Com. University*, 948 F.Supp. 573, 580 n. 2 (E.D.Va. 1996). The *O'Connor* decision was based on the assumption that the level of age disparity,

■ Moreover, plaintiff has not proffered evidence that he performed his duties at or near the level expected by defendant. Defendant lists several incidents requiring discipline which suggest that plaintiff was not properly performing his job. *See id.* at ¶¶ 7–14. Plaintiff's only "contradictory" evidence is statements by himself and two of his co-workers that he was a "good worker," and his claim that one of the incidents cited by defendant as a reason for discipline did not happen. *See* Kidane Decl. ¶¶ 3 & 11; Cooper Decl. ¶ 3; Warner Decl. ¶ 2; *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir.1992) (stating that affidavits containing "rumors, conclusory allegations and subjective beliefs" are insufficient to establish a claim of discrimination as a matter of law). He does not dispute the other incidents cited by defendant as proof that he was not performing at or near the level expected by defendant. Thus, defendant's motion for summary judgment on plaintiff's discriminatory demotion and discharge claims under § 1981 is granted.

Plaintiff has, however, alleged sufficient facts to establish a prima facie case of retaliation. *See Thomas*, 131 F.3d at 202. Defendant counters this prima facie case with evidence that it had many legitimate, nondiscriminatory reasons for demoting and ultimately firing plaintiff. *See* Hare Aff. ¶¶ 7–14. To avoid summary judgment, therefore, plaintiff must produce

some objective evidence showing that defendant's proffered reasons are mere pretext. *Ridley v. District of Columbia*, 945 F.Supp. 333, 342 (D.D.C.1996); *Batson*, 912 F.Supp. at 578. Plaintiff has failed to meet his burden in this case. As previously discussed, plaintiff does not dispute most of the incidents giving rise to disciplinary action against him; he merely submits affidavits from two of his co-workers stating that he was a "good worker." *See supra* & n. 2. He has failed to proffer evidence suggesting that his firing constituted disparate treatment, because there is no evidence that employees who falsified their time cards but were not fired were "similarly situated" to plaintiff. *See supra* n. 8. Thus, defendant's motions for summary judgment on plaintiff's § 1981 claims in Civil Actions No. 95–2265 and No. 97–477 are granted.[9]

## CONCLUSION

For the aforementioned reasons, summary judgment is granted to defendant on all of plaintiff's claims in Civil Actions No. 95–2265 and 97–477. In accordance with Federal Rule of Civil Procedure 58, appropriate Judgments for each case accompany this Opinion.

## *JUDGMENT*

For the reasons stated in the accompanying Opinion, it hereby is

as opposed to whether or not one is over or under age 40, is a far more reliable indicator of age discrimination. *O'Connor*, 116 S.Ct. at 1310. Inferences of racial discrimination, however, are easy to draw—your replacement is either of the same race as you or is not. *See Simens*, 960 F.Supp. at 9.

But even assuming arguendo that plaintiff is not barred from establishing a prima facie case just because he was not replaced by a member outside his protected class, plaintiff has not met his burden of proving the disparate treatment necessary for a prima facie case. In order to prove disparate treatment, plaintiff must produce evidence which establishes that for the same conduct he was treated differently than similarly situated employees outside his protected class. *See Mitchell*

*v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992); *Phillips v. Holladay Property Servs., Inc.*, 937 F.Supp. 32, 35 (D.D.C.1996), *aff'd*, 1997 WL 411695 (D.C.Cir.1997). Though plaintiff proffers evidence that three white females who falsified time cards were not discharged, he does not offer evidence that the women were "similarly situated" to him, *e.g.* whether they had the same history of disciplinary problems. *See Toledo Hosp.*, 964 F.2d at 583.

9. The Court notes that, even if plaintiff's Title VII claims of discriminatory demotion and discharge and retaliation in Civil Action No. 95–2265 were not administratively barred, they would still fail as a matter of law for the same reasons as his parallel § 1981 claims.

ORDERED, that plaintiff's motion to strike is denied. It hereby further is

ORDERED, that defendant's motion for summary judgment is granted.

SO ORDERED.

### JUDGMENT

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendant's motion to dismiss or, in the alternative, for summary judgment is granted. The Court grants summary judgment on all counts of plaintiff's complaint.

SO ORDERED.