Maria REMEDIOS JOSE, Plaintiff,

v.

THE HOSPITAL FOR SICK
CHILDREN, Defendant.

No. CIV. A. 96–2869(PLF).

United States District Court,
District of Columbia.

Sept. 29, 2000.

Sol Zalel Rosen, Washington, DC, for Plaintiff.

Susan Tahernia, Thelen, Reid & Priest, LLP, Washington, DC, John Gregory Kruchko, Kruchko. & Fries, McLean, VA, Steven William Ray, Edward Lee Isler, Ray & Isler, P.C., Vienna, VA, for Defendant.

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion for summary judgment. Plaintiff alleges that defendant discriminated against her on the basis of race and national origin in violation of 42 U.S.C. § 1981 and the D.C. Human Rights Act when it terminated her employment. Upon careful consideration of the briefs filed in this case, the Court concludes that plaintiff has not rebutted defendant's legitimate, non-discriminatory reason for her termination. The Court therefore grants summary judgment for the defendant.

## I. BACKGROUND

Plaintiff Maria Remedios Jose, a Filipino female, began working at the Hospital for Sick Children ("Hospital") as a staff nurse in 1983. Plaintiff held a number of positions at the Hospital over the next twelve years. In October 1995, plaintiff was informed that her position as a nurse educator was scheduled to be eliminated and she was offered and accepted the position of Infection Control ("IC") Practitioner and Employee Health ("EH") Nurse.

Plaintiff's job responsibilities as IC Practitioner included monitoring incidents of infection throughout the Hospital, tracking antibiotic use by patients, and attempting to prevent possible infection. She was to collect information regarding staff compliance with infection control procedures and compile information for use by other health care providers in the Hospital. She also served as Chair of the Infection Control Committee, a Hospital committee made up of physicians, nurses and other Hospital staff, which was responsible for reviewing and discussing issues in the Hospital relating to infection control. Plaintiff reported directly to Christine Leyden, Director of Patient Care, with respect to her infection control responsibilities.

As EH Nurse, plaintiff was responsible for reviewing staff records to ensure that each staff member satisfied the health-related requirements of his or her employment, for overseeing the maintenance of the Hospital's employee health files, and for being available in the event of an employee health issue. Janis Bonnet, Director of Human Resources, was plaintiff's direct supervisor with respect to her employee health responsibilities.

In late 1995, the Hospital began preparing for an accreditation review by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") that was to be conducted between August 1996 and November 1996. The JCAHO is a governmental body that reviews healthcare organizations every three years to ensure com-

pliance with certain mandated standards of care. A healthcare organization must maintain JCAHO accreditation in order to receive funds from the government under Medicare and Medicaid. Accreditation by the JCAHO was extremely important to the Hospital since 80 to 90 percent of its revenue was derived from Medicaid patients. During plaintiff's employment at the Hospital, she had been through the JCAHO process on several prior occasions and was familiar with the Hospital's preparation procedures.

In preparation for the accreditation review, the Hospital conducted a mock survey of its facilities. Plaintiff was a member of the four-person team that conducted the survey. The survey revealed eleven areas of deficiency with respect to Infection Control and made seven recommendations for bringing Infection Control within the JCAHO's standards before the accreditation team arrived. The recommendations for plaintiff's areas of responsibility included: (1) revising a Hospital-wide Infection Control Surveillance Plan to reflect JCAHO standards; (2) updating and expanding infection control practices for two of the Hospital's units; (3) updating the Infection Control Policy and Procedures Manual; (4) updating the Employee Health Policies and Procedures Manual; and (5) updating certain infection control data information.

In January 1996, plaintiff requested extended vacation leave from July 1 to July 31, 1996. Both Ms. Leyden and Ms. Bonnet informed plaintiff that approval of her leave request was expressly contingent upon her ability to demonstrate, prior to taking the vacation, that the areas under her responsibility were fully ready for the JCAHO survey which might take place as early as August.

From January through June 1996, plaintiff and her supervisors were in constant communication regarding the needed preparations for the JCAHO review. According to defendant, neither Ms. Leyden nor Ms. Bonnet were content with plaintiff's performance, and they told her so on numerous occasions. On June 27, 1996, less than a week before plaintiff planned to go on her extended vacation, Ms. Leyden and Ms. Bonnet met and determined that plaintiff's failure to prepare the JCAHO review, despite their repeated counseling and admonitions of the importance to the Hospital of such preparation, constituted grounds for plaintiff's termination. Ms. Leyden and Ms. Bonnet met with plaintiff the following day regarding their determination and gave her a written memorandum summarizing the grounds for their decision. Rather than being fired, plaintiff chose to resign.

In July 1996, plaintiff's infection control duties were assigned to Janice LePlatte, an African American female born in Trinidad and Tobago. Her responsibilities for the Employee Health Department were assigned to Dolores Natale, a Caucasian female. The JCAHO survey was conducted on August 19–21, 1996, and the Hospital was found in noncompliance in the infection control area.

Plaintiff filed a complaint for employment discrimination in this Court in December 1996, claiming violations of 42 U.S.C. § 1981 and the D.C. Human Rights Act. *See* Complaint at 1–2.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is

to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in her favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir. 1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. 2505.

■ Actions brought under Section 1981 and the D.C. Human Rights Act are evaluated in the same manner as claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *See Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1553 (D.C.Cir.1997) ("[t]he burdens of persuasion for claims raised under § 1981 or under the D.C. law are identical to those for claims alleging discriminating treatment in violation of Title VII"). In order to prevail in a case brought under Title VII, the plaintiff initially must establish a *prima facie* case of prohibited discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To make out a *prima facie* case that the Hospital discriminated against plaintiff in terminating her, plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged; and (4) she was replaced by a person of equal or lesser ability who is not a member of the protected class. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ If the plaintiff succeeds in making out a *prima facie* case, the burden of production shifts to the defendant to articulate some legitimate, non-discriminatory reason for the challenged action. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. 1817. Once the defendant articulates a sufficient reason, the presumption raised by the *prima facie* case is rebutted, and the burden shifts back to the plaintiff to produce some evidence, either direct or circumstantial, to show that the defendant's proffered reason for its actions is a mere pretext for discrimination. *Id.* at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Center v. Hicks,* 509 U.S. at 507–08, 113 S.Ct. 2742. Summary judgment "is appropriate where either the evidence is insufficient to establish a *prima facie* case, ... or, assuming a *prima facie* case, there is no genuine issue of material fact that the defendant's articulated non-discriminatory reason for the challenged decision is pretextual." *Paul v. Federal Nat'l Mortgage Ass'n,* 697 F.Supp. 547, 553, (D.D.C.1988); *see Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284 (D.C.Cir.1998) *(en banc).*

■ While summary judgment must be approached with special caution in employment discrimination cases, and the Court "must be extra-careful to view all the evidence in the light most favorable" to plaintiff, *Ross v. Runyon,* 859 F.Supp. 15, 21–22 (D.D.C.1994), a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial. Specifically, if defendant provides evidence of a legitimate non-discriminatory reason, plaintiff "must then bring forward evidence of the pretextual nature of the legitimate non-discriminatory purpose posited by the defendant .... Evidence of discrimination that is 'merely colorable,' or 'not significantly probative' cannot prevent the issuance of summary judgment." *Johnson v. Digital Equipment Corp.,* 836 F.Supp. 14, 15 (D.D.C. 1993) (citation omitted). In evaluating the evidence, "the plaintiff's attack on the em-

ployer's explanation must always be assessed in light of the total circumstances of the case ...." *Aka v. Washington Hosp. Ctr.*, 156 F.3d at 1291.

### B. The Undisputed Facts

 Defendant does not dispute that plaintiff is a member of a protected class—Asian/Filipino—or that she was replaced by an African American woman and a Caucasian woman, neither of whom were members of plaintiff's protected class.[1] It is also apparent that plaintiff has presented no direct evidence that she was discriminated against. She simply believes that her overall job performance was good and that she therefore must have been fired for a discriminatory reason. *See* Def. Mem. in Support of Summ. J., Exh. 6 (Deposition of Maria Remedios Jose) at 208–09. The issue therefore is whether plaintiff has sufficiently established, through circumstantial evidence or from inferences that are fairly drawn from the facts—and drawing all such reasonable inference sin her favor on summary judgment—that she was qualified for her job, or whether defendant has articulated a legitimate nondiscriminatory reason for plaintiff's termination that has not been shown to be pretextual.

To show that she was "qualified" for the position, "plaintiff must show that [s]he met [her] employer's legitimate expectations." *Smith v. Chamber of Commerce*, 645 F.Supp. 604, 607 (D.D.C.1986); *accord Buttell v. American Podiatric Medical Ass'n*, 700 F.Supp. 592, 596 (D.D.C.1988). As its legitimate non-discriminatory reason

for plaintiff's termination, however, the Hospital proffers that plaintiff's job performance as IC Practitioner and EH Nurse was marked by persistent performance deficiencies and specifically that she utterly failed in meeting her primary responsibility to help prepare the Hospital for the JCAHO review. The Court finds that plaintiff has not rebutted the Hospital's asserted legitimate reason for her termination.

When plaintiff accepted her position as IC Practitioner/EH Nurse, she was aware that she would be required to focus her attention primarily on preparing her areas for the upcoming JCAHO accreditation survey. *See* Def.'s Motion, Exh. 2 at 112. The Hospital, in support of its unsatisfactory performance justification for termination, produced unrebutted evidence of the host of failures leading to plaintiff's discharge, including plaintiff's own deposition testimony and the sworn declarations of five Hospital employees. The reasons for her termination included: (1) her failure to revise and implement the Infection Surveillance Plan in a timely manner;[2] (2) her failure to review the JCAHO standards with the Infection Control Committee;[3] (3) her failure to properly update and organize the Hospital's Infection Control Policies and Procedures Manual; (4) her failure to collect and report Infection Control data in a timely manner; (5) her failure to organize and maintain accurate records with respect to Employee Health information; and (6) her failure to discharge her duties in a satisfactory manner despite the fact that plaintiff's supervisors,

1. Defendant argues that plaintiff's African American replacement also was a nonwhite and therefore was a member of a protected class. From this fact, defendant argues that, even assuming plaintiff could meet the first three prongs of the *McDonnell Douglas* test, plaintiff simply cannot make out a *prima facie* case because she was replaced by someone also a member of a protected class. Because discrimination is often race or ethnicity-specific and an employer might discriminate against Asian employees where he or she would not discriminate against African American employees, the Court finds this argument

without merit. *See Lam v. University of Hawaii*, 40 F.3d 1551, 1561 n. 16 (9th Cir.1994).

2. Plaintiff acknowledged in her deposition that the plan was not implemented by the time of her vacation and that she did not expect the necessary data to be ready until after she returned from vacation and attended a meeting not scheduled until August 13, 1996. *See* Jose Dep. at 119–21. As noted, the JCAHO survey team arrived on August 19, 1996.

3. *See* Jose Dep. at 134–35.

Ms. Leyden and Ms. Bonnet, attempted to counsel her with respect to their concerns.

To counter the Hospital's proffered legitimate non-discriminatory reason, plaintiff quibbles with specific details of her alleged deficiencies, but she does nothing to undermine the Hospital's basic assessment that her performance was unsatisfactory and that virtually everything she was to do in preparation for the JACHO visit was left undone. Plaintiff offers, for example, the assertion that the clutter in the Employee Health office observed by Ms. Leyden was in fact neat piles that only looked disorganized due to the cramped office space allotted to Employee Health. Pl. Opp. to Motion for Summ. J., Exh. 1 (Declaration of Maria Remedios Jose), ¶¶ 33–37. This information, however, does nothing to rebut or call into question the fact that plaintiff's supervisors observed piles of paper that led them to believe that plaintiff was not meeting the Hospital's legitimate expectations. In any case, this is hardly a "material fact" precluding summary judgment.

Plaintiff has otherwise offered the type of self-serving allegations that are simply insufficient to establish pretext. *See, e.g.,* Jose Dep. at 208–09 ("My performance was good, my overall performance was good. I don't see any reason why I would be fired"). Even viewing the evidence in the light most favorable to plaintiff, the record is devoid of any direct or circumstantial evidence from which a reasonable trier of fact could question the defendant's legitimate non-discriminatory reason. The Court therefore concludes that plaintiff has failed to rebut the defendant's non-discriminatory reason for terminating her and will grant summary judgment in favor of defendant.

An Order and Judgment consistent with this Memorandum Opinion will be issued this same day.

SO ORDERED.